# EXHIBIT "B"

**LINER FREEDMAN TAITELMAN + COOLEY, LLP**
ATTORNEYS AT LAW

**1801 CENTURY PARK WEST, 5th FL**
**LOS ANGELES, CALIFORNIA 90067**
TEL: (310) 201-0005
FAX: (310) 201-0045
**E-MAIL:** egarofalo@lftcllp.com

ELLYN S. GAROFALO

May 23, 2025

<u>Via Email:</u>

Michael J. Gottlieb
Kristin E. Bender
Willkie Farr & Gallegher LLP
1875 K. Street NW
Washington, DC 20006
    Email: MGottlieb@willkie.com
           KBender@willkie.com

    Re:    *Blake Lively, et al. v. Wayfarer Studios LLC, et al.*
           (Civil Action No. 1:24-cv-10049;1:25-cv-00449)

Dear Michael:

    Pursuant to Federal Rules of Civil Procedure 37 and 45 and Central District of California Local Rules 37-1 and 45, Liner Freedman Taitelman + Cooley LLP ("LFTC") hereby requests a telephonic conference of counsel within ten days of delivery of this letter regarding Blake Lively's ("Lively") subpoena served on LFTC on May 20, 2025.

    The subpoena seeks reams of information that bears no or at best tangential relevance to the parties' respective claims, counterclaims and defenses.  Not only is the subpoena overbroad, it targets information protected by the attorney-client privilege and attorney work-product doctrine. Among other things, Lively seeks identification of LFTC's financial accounts, including the financial institutions at which the accounts are maintained, and its account numbers.

    Courts disfavor efforts to obtain discovery from opposing counsel.  Lively's effort to obtain discovery flies in the face of the rules governing discovery from opposing counsel and the well-established policies underpinning those rules which seek to deter such litigation tactics.

    Moreover, the subpoena fails to narrowly tailor its requests, seeking extremely broad categories of irrelevant or privileged documents.  The subpoena includes fourteen prefatory

425586.1

Michael J. Gottlieb
Re:  *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 2

pages of definitions and instructions.  Thirty-eight complex definitions (including no. 31 which has nine subparts) significantly expand the scope of the individual requests.  For instance, Lively broadly defines "You," "Your," or "Yours" as "Liner Freedman Taitelman + Cooley LLP and any of its officers, directors, employees, partners, members, corporate parent, subsidiaries."  In another example, "Digital Campaign" is defined as "efforts of the Wayfarer Defendants and/or any Affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, Ms. Lively's and Mr. Reynolds's families, the Wayfarer Defendants, the Film, or the Consolidated Action on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint."  Some definitions, such as those for "Ms. Swift," "TAG" and "Wallace," are superfluous as the terms do not appear in any of the requests. The time frame for certain requests is well outside the time in which the alleged "smear campaign" occurred, defeating any argument that the requests are tailored to elicit information relevant to the alleged "smear campaign."  Simply put, the sheer breadth of the definitions and instructions alone speaks volumes about the real intent – to intimidate and harass opposing counsel, and multiply the proceedings and their costs.

Second, the individual requests, which are addressed below, seek irrelevant or only tangentially relevant information, sweep in privileged information and target information that is available from less intrusive sources.  In fact, much of the material sought in the subpoena has been requested by Lively in discovery directed to the Wayfarer Parties.  Lively seeks the following documents from LFTC:

**REQUEST FOR PRODUCTION NO. 1:**

Agreements effective at any point from July 1, 2024 through present, whether executed prior, on, or subsequent to either date, including contracts, retainer agreements, and engagement letters, between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Film, or with any Content Creator who has spoken publicly regarding the same.

**REQUEST FOR PRODUCTION NO. 2:**

For the time period July 1, 2024 through present, all Documents concerning or relating to any invoices (including invoice entries) for "services rendered" or "third party services" or similar descriptions, between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator, where such invoice is concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. For the sake of clarity, this Request includes invoices in which You are involved at any

Michael J. Gottlieb
Re: *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 3

point in any Payment chain to any Content Creator, whether directly or indirectly, including but not limited to where another Person or entity is the final payor.

**REQUEST FOR PRODUCTION NO. 3:**

For the time period July 1, 2024 through present, all Documents concerning or relating to any Payment between or involving You (including on behalf of any Wayfarer Defendant) and any Content Creator, where such Payment is concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. For the sake of clarity, this Request includes Payments in which You are involved at any point in any Payment chain to any Content Creator, whether directly or indirectly, including but not limited to where another Person or entity is the final payor.

**REQUEST FOR PRODUCTION NO. 4:**

For the time period July 1, 2024 through present, Documents sufficient to identify the name(s) of the financial institution(s), the name(s) of the account holder(s), and any account number(s) associated with all bank account(s) You used to make or receive any Payment (including on behalf of any Wayfarer Defendant) concerning the use of digital, online, Content Creator, or influencer services concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film.

**REQUEST FOR PRODUCTION NO. 5:**

For the time period July 1, 2024 through present, all Documents and Communications involving You (including on behalf of any Wayfarer Defendant) concerning digital, online, Content Creator, or influencer services concerning Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film. To the extent responsive Documents and/or Communications are in the possession, custody or control of the Wayfarer Defendants, only Documents and/or Communications uniquely retained by You need be produced in response to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

For the time period July 1, 2024 through present, all Documents and Communications between (i.e., sent to, received from, copying, or blind copying) You and any journalist, reporter, producer, editor, or any other representative of a newspaper, online news source, podcast, television network, radio station, or any other form of media, concerning or relating to the Consolidated Action, Ms. Lively, Mr. Reynolds, any of the Wayfarer Defendants, the Digital Campaign, or the Film.

425586.1

Michael J. Gottlieb
Re:  *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 4

**REQUEST FOR PRODUCTION NO. 7:**

For the time period August 1, 2024 through present, all Documents and Communications reflecting any communication with any source that provided You information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively.

**REQUEST FOR PRODUCTION NO. 8:**

For the time period August 1, 2024 through present, all Documents, including mobile phone billing records, sufficient to show the calls You or Mr. Freedman made and/or received with any source concerning information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively.

The requests are improper and LFTC intends to seek an order quashing the subpoena on the grounds described below.

Rule 26(b)(2) permits a district court to limit discovery that, among other things, is more readily obtainable from another source if the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(i)-(iii); *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69–72 (2d Cir. 2003).  Rule 26(c) provides that "for good cause shown" a court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery. Fed. R. Civ. P. 26(c)(1), (3); *Friedman*, 350 F.3d at 69–70.

District courts disfavor discovery directed to opposing counsel over concerns of the burden such discovery places on the adversarial process and the potential of opening a back door to obtaining privileged information about an opposing counsel's litigation strategy.  *Friedman*, 350 F.3d at 69–72.  In *Shelton v. Amer. Motors Corp*, 805 F.2d 1323 (8th Cir. 1986), the Eight Circuit court articulated a test for discovery from opposing counsel.  To obtain such discovery, a party must show: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case. *Id.* (the "*Shelton* rule").  Failure to establish any prong of the *Shelton* test is grounds to quash a subpoena to opposing counsel.  *Shelton*, 805 F.2d at 1328–29; *Silver v. BA Sports Nutrition, LLC*, No. 20-CV-00633-SI, 2020 WL 6342939, at *2 (N.D. Cal. Oct. 29, 2020) (applying *Shelton* and rejecting Rule 26's broader discovery standard).  The heightened standard from *Shelton* applies to documents subpoenas.  *Silver*, 2020 WL 6342939, at *2; *Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, No. C06-7028 MMC MEJ, 2007 WL 4171136, at *1.

Michael J. Gottlieb
Re:  *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 5

  The Second Circuit applies a different standard which takes into consideration all of the relevant facts and circumstances, such as "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted."  *In re Subpoena Issued to Dennis Friedman* ("*Friedman*"), 350 F.3d 65, 72 (2d Cir. 2003).  "Under this approach, the fact that a deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require resort to alternative discovery devices, but it is a circumstance to be considered." *Id.*

  The Ninth Circuit has cited *Shelton* for the proposition that depositions of "opposing counsel" are disfavored.  *See In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717, at *3–4 (C.D. Cal. Sept. 23, 2016)*.*  The Ninth Circuit has applied the *Shelton* standard to non-deposition discovery involving opposing counsel.  *Silver*, 2020 WL 6342939, at *2; *see also Flotsam*, 2007 WL 4171136, at *1 (applying *Shelton* and granting motion to quash subpoena seeking documents); *Nocal Inc. v. Sabercut Ventures, Inc.*, No. C 04-0240 PJH (JL), 2004 WL 3174427, at *2-4 (N.D. Cal. Nov. 15, 2004) (holding plaintiff failed "to satisfy any of the three prongs of the test in *Shelton*" for subpoena seeking deposition and production of documents); *see also Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-cv-01882-JGB (SHKx), 2020 WL 2405295, at *8–9 (C.D. Cal. Mar. 10, 2020) (applying *Shelton* to subpoenas directed at Monster's former counsel and law firm).

  However, the Ninth Circuit has not adopted either standard, with some courts favoring the Second Circuit's approach in *Friedman*.  *LionHead Glob. No 2, LLC v. Todd Reed, Inc.*, No. 219CV07903JWHAFM, 2020 WL 10692515, at *2 (C.D. Cal. Dec. 14, 2020).  As shown below, under either *Shelton* or *Friedman*, the LFTC Subpoena should be quashed as it imposes an excessive and undue burden on litigation, including an effort to invade the attorney-client and work-product privileges and open the door to the discovery of LFTC's litigation strategy.

  **A. The *Shelton* Test Dictates that the LFTC Subpoena Be Quashed.**

   a. The Information Sought by the LFTC Subpoena Targets Irrelevant and Privileged Information.

  The requests target all communications with the media.  First, "Content Creators" (broadly defined as "any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services") embraces, among other things, any person who posts on the internet and vendors such as digital services vendors hired to provide litigation support.  Agreements and payments to such persons and entities are irrelevant to the litigation and may fall within the attorney-client privilege and work-product doctrine.  *See, e.g., United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).

Michael J. Gottlieb
Re: *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 6

Second, LFTC's communications with the media, including "Content Creators", are not relevant to the issues at stake in the litigation. Neither the Lively Parties nor the Wayfarer Parties have been shy about publishing their respective claims and both sides have advanced their positions through the media. Whether LFTC, on its clients' behalf, engaged "Content Creators" to advance the goals of the litigation is irrelevant to the key issues: whether Lively was sexually harassed on the set of the Film and whether either side defamed the other. In light of the First Amendment's guarantee of free speech, it is unclear why a "smear campaign" would even be actionable. If the claim is defamation, the issue is whether the Wayfarer Parties' public statements were true and, if not, were made maliciously. The fact that a law firm may have engaged "Content Creators" and/or paid them, is irrelevant to the case. Even assuming some marginal relevance of payments to influencers, there is no conceivable relevance to or justification for the disclosure of information identifying a law firm's financial accounts.

Third, Request Nos. 7 and 8 seek "all Documents and Communications reflecting any communication with any source that provided You information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively" and "mobile phone billing records, sufficient /to show the calls You or Mr. Freedman made and/or received with any source concerning information relating to, or that formed the basis for, Mr. Freedman's public statements regarding Ms. Lively" for the period August 1, 2024 and the present. A request for communications between LFTC (including the persons and entities swept into the broad definition of "You") and any "source" of information imparted to LFTC partner Bryan Freedman, on its face, sweeps in attorney-client communications, and likely work-product. For instance, perhaps Mr. Baldoni, LFTC's client, was a source of information that formed the bases for Mr. Freedman's statements. Surely, Lively does not seriously believe that such communications are discoverable?

      b.  The Information Requested by the LFTC Subpoena is Not Crucial to the Preparation of the Case.

As explained above, communications with, or payments to, the media are not relevant, much less crucial to the claims at issue in the litigation.

      c.  Lively Has Other, Less Intrusive Means to Obtain Discovery Purportedly Relevant to a "Smear Campaign."

Lively has other avenues to obtain information relating to the alleged "smear campaign," including the parties to the litigation. In fact, Lively has already sought this information (with the exception of LFTC's financial information) in document requests directed to the Wayfarer Parties. *See Silver v. BA Sports Nutrition, LLC*, No. 20-CV-00633-SI, 2020 WL 6342939, at *2 (N.D. Cal. Oct. 29, 2020) (defendant failed to satisfy the first prong of the *Shelton* test, as it appears that defendant is in the process of seeking the same documents from the plaintiffs themselves.)

425586.1

Michael J. Gottlieb
Re:  *Blake Lively v. Wayfarer Studios LLC*
May 23, 2025

Page 7

      In sum, under the *Shelton* test, the LFTC Subpoena is overbroad or seeks privileged attorney-client communications or work-product and thus should be quashed.  *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007); *Nova Biomedical Corp. v. i-STAT Corp.,* 182 F.R.D. 419, 423 (S.D.N.Y.1998) (affirming magistrate's order quashing subpoenas where the document requests contained in the subpoenas were overbroad and therefore unduly burdensome under Rule 45 of the Federal Rules of Civil Procedure); *United States v. Pelaez,* No. 96 Cr. 464, 1997 U.S. Dist. LEXIS 11334, at *3 (S.D.N.Y. Feb. 20, 1997) (quashing subpoena where the document request was "overbroad and a patent attempt at a forbidden 'fishing expedition'") (quoting *United States v. Nixon,* 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

      **B.**      **The LFTC Subpoena Should Be Quashed Under the *Friedman* Test.**

      As shown above, the relevant facts and circumstances, such as the need for the documents sought by the LFTC Subpoena, LFTC's role as counsel to the Wayfarer Parties, the relation or relevance of the sought-after information to the pending litigation in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues and the extent of discovery already conducted, all dictate that the LFTC Subpoena be quashed or substantially modified.

      Please let us know which dates in the next 10 days you are available to meet and confer pursuant to C.D. Cal. Local Rule 37.

      Sincerely,

      Ellyn S. Garofalo

425586.1