LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (SBN 151990)
　bfreedman@lftcllp.com
Ellyn S. Garofalo (SBN 158795)
　egarofalo@lftcllp.com
Amir Kaltgrad (SBN 252399)
　akaltgrad@lftcllp.com
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

*Attorneys for Movant Liner Freedman Taitelman + Cooley, LLP*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINER FREEDMAN TAITELMAN + COOLEY, LLP,<br><br>　　　　　Movant,<br><br>　v.<br><br>BLAKE LIVELY, an individual,<br><br>　　　　　Respondent. | Case No.: 2:25-mc-53-MWC-AJR<br><br>**LINER FREEDMAN TAITELMAN + COOLEY, LLP'S SUPPLEMENTAL MEMORANDUM REGARDING MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS**<br><br>Date:　　　July 11, 2025<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 780<br><br>Action Filed:　June 13, 2025 |

Pursuant to Local Rule 37-2.3, Movant Liner Freedman Taitelman + Cooley, LLP ("LFTC") submits its supplemental memorandum in support of its Motion to Quash Subpoena.

### I. The Court Should Quash the Subpoena Directed to LFTC

Respondent Blake Lively ("Lively") contends that she is entitled to discovery from LFTC because it acted as an the Wayagent of its clients in coordinating adverse statements about her to media outlets. First, all litigation counsel are agents for their clients. Simply because a lawyer advocates for his client, even if reported by the press, does not entitle opposing parties to discovery of that lawyer's files. To hold otherwise would eviscerate the attorney-client privilege and work product doctrine simply by equating advocacy with a retaliation claim.

Second, Lively's theories of hypothetical relevance do not rise to the level of "crucial" required to obtain discovery from opposing counsel. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (holding party seeking discovery from opposing counsel must show (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.).

Third, Lively fails to address authority directly on point, instead relying on factually distinguishable cases. Multiple California district courts have directly addressed the issue of a document subpoena directed to opposing counsel that sought documents relating to statements to the press after a dispute has arisen. For instance, in *Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C06-7028 MMC MEJ, 2007 WL 4171136, at *1 (N.D. Cal. Nov. 26, 2007), the defendant served a subpoena on opposing counsel seeking documents "relating to press conferences, press releases, and other extrajudicial activities concerning this litigation which Defendant claims Plaintiff…and third parties, including its counsel, have orchestrated." *Id.*

When the opposing counsel moved to quash the subpoena, the Court held that the subpoenaing party had not met the requirements for obtaining discovery from opposing counsel under *Shelton*. Specifically, the *Flotsam* Court found that the subpoenaing party had not demonstrated that no other means existed to obtain the discovery or that the requested information was "crucial" to the case. *Id.* In addition, the Court found the request was "overly broad and seeks documents protected from disclosure by the attorney-client privilege and the work product doctrine." *Id.*; *see also Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-CV-01882-JGB (SHKX), 2020 WL 2405295, at *13 (C.D. Cal. Mar. 10, 2020) (quashing document subpoena served on opposing counsel seeking "All Documents and Communications related to media press releases, media statements, and media interviews related to [defendants]" because the request sought documents that were privileged or irrelevant).

Rather than address the cases on point, Lively relies on authority that is factually distinguishable from the present dispute. Each case cited by Lively involved a lawyer who was either an integral part of their client's business process outside of their role as lawyer, or specifically injected themselves as a witness during the litigation. *See Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 587 (C.D. Cal. 2007) (allowing deposition of defendant's general counsel who was also the "vice president," "founder", brother and "business partner" of the defendant's CEO and identified as a person most knowledgeable about the product in dispute in the litigation); *Sec'y of Lab. v. Nuzon Corp.*, No. 816CV00363CJCKESX, 2018 WL 3655396, at *1 (C.D. Cal. July 30, 2018) (allowing deposition of opposing counsel who had signed declarations containing facts related to the underlying dispute); *Shiferaw v. Sunrise Senior Living Mgmt., Inc.*, No. LACV1302171JAKPLAX, 2014 WL 12585796, at *23 (C.D. Cal. June 11, 2014), (noting opposing counsel "elected to insert himself into the case as a witness" because he acted as an expert witness, calculating damages for wage and

hour claims, and "presented a declaration that was based on the work that he performed and oversaw"); *Victory Dollar Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 2:22-CV-09120-MCS-RAO, 2023 WL 9003011, at *2 (C.D. Cal. Dec. 7, 2023) (allowing defendant to call plaintiff's attorney at trial because he had allegedly made the very misrepresentations at issue in the case on behalf of plaintiff); *Littlefield v. Nutribullet, LLC*, No. CV 16-6894 MWF (SSX), 2017 WL 10438897, at *1 (C.D. Cal. Nov. 7, 2017) (allowing deposition of opposing counsel who was also defendant's in house counsel, corporate officer and member of the Board of Directors where deposition would solely be taken "in his role as a corporate officer and Board member.")

Lively does not contend that LFTC is a part of Wayfarer's business operations or that it affirmatively injected itself into the litigation as an expert or through factual declarations. Rather, Lively contends that she is entitled to obtain documents from LFTC because it was a "witness" and agent for its clients in an alleged smear campaign. As evidence, Lively points to LFTC partner Bryan Freedman's prior representation of celebrity clients and public statements to the press made as the Wayfarer parties' lawyer.[1] Surely Lively does not contend that statements to the press entitle her to broad access to LFTC's files. Indeed, her own counsel has made numerous public statements regarding the litigation. Surely, Lively did not intend to invite a subpoena to her own counsel?

Lively's subpoena should be seen for what it is - a fishing expedition meant to harass her opposing counsel based on a hypothetical theory of relevance. However, under *Shelton*, information requested must be "crucial to the preparation of the case," not merely hypothetically relevant. *Shelton*, 805 F.2d at 1327.

Lively fails to show that the information she seeks meets any of the other factors under *Shelton*. First, the information could be obtained from the content

---

[1] Lively refers to Mr. Freedman's statements in the media ***after*** Lively filed her complaint with the California Civil Rights Department. Dkt 1-1 at 6:16-7:11.

creators themselves. Second, the requests encompass privileged information. Lively contends she is entitled to LFTC's financial account information because it might be relevant to her agency theory, even if LFTC uses those accounts for other purposes. Lively also contends it is entitled to all mobile phone billing records from every LFTC employee and agent because she believes they might be relevant to her theory of retaliation. Lively, however, fails to address the burden such a request would entail for a third party, let alone privacy and privilege issues.[2] Moreover, the requests are extremely broad, with overbroad and ambiguous definitions. While Lively claims the requests are narrowly tailored, the plain language of the requests show otherwise. For the reasons stated above and in the Joint Stipulation, the Court should quash the subpoena.

## II. The Court Should Not Transfer the Motion to the S.D.N.Y.

In an effort to avoid application of the *Shelton* standard, Lively argues that this Court should decline to decide the Motion to Quash, claiming that exceptional circumstances necessitate its transfer to the Southern District of New York. Rule 45 of the Federal Rules of Civil Procedure permits the transfer of subpoena-related motions from the court where compliance is due only where (1) the person subject to the subpoena consents; or (2) the court finds exceptional circumstances. *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SAMC1500022DOCDFMX, 2015 WL 12746706, at *2 (C.D. Cal. Oct. 23, 2015); Fed. R. Civ. P. 45(f).

LFTC does not consent to transfer of this motion to the Southern District of New York. As for exceptional circumstances, "the proponent of transfer bears the burden of showing that such circumstances are present." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. The Advisory Notes provide:

---

[2] Lively wrongly claims that LFTC could only be a witness prior to the filing of the CRD complaint rather than opposing counsel. While LFTC may not have been "counsel of record" prior to the filing of a litigation, it certainly could be providing legal advice that would be protected by the attorney-client privilege.

"The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id*. "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Lively can point to no risk of inconsistent outcomes, or any likelihood of the same issues arising in discovery in many districts, as contemplated by the Advisory Committee Notes.  This is not a case in which the interests weighing in favor of transfer so clearly outweigh the interests of LFTC in having a local court determine its rights.[3]  On the contrary, the issue at stake in this Motion—whether Lively can show she needs and is entitled to documents held by opposing counsel—is straightforward. The Court can and should decide this Motion.  Lively argues that LFTC has the ability to litigate in New York as evidenced by LFTC partner Bryan Freedman's agreement to consolidation of a related action.  However, Mr. Freedman's comments related to consolidation of two separate cases involving to the same subject matter – Lively's allegations of sexual harassment on the set of the movie It Ends With Us.  Lively's sexual harassment claim is not implicated by the subpoena at issue.  Whether LFTC has the *ability* to litigate in New York does not deprive it of its right to have this Court decide whether a subpoena directed to it should be quashed.

---

[3] While LFTC's website identifies a New York address as an office location, no LFTC attorneys or staff regularly work out of that office.

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | Dated: June 27, 2025 | LINER FREEDMAN TAITELMAN + COOLEY, LLP |
| 3 | | |
| 4 | | _/s/    Ellyn S. Garofalo_ |
| 5 | | Bryan J. Freedman |
| 6 | | Ellyn S. Garofalo |
| | | Amir Kaltgrad |
| 7 | | |
| 8 | | *Attorneys for Movant Liner Freedman Taitelman + Cooley, LLP* |