1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4   LINER FREEDMAN TAITELMAN        ) Case No. 2:25-MC-00053-MWC-
    COOLEY, LLP,                    )                         AJR
5                                   )
            Plaintiff,              ) Los Angeles, California
6                                   )
    vs.                             ) Thursday, July 3, 2025
7                                   )
    BLAKE LIVELY,                   )
8                                   ) (11:06 a.m. to 11:35 a.m.)
            Defendant.              )
9   _____)

10

11        TRANSCRIPT OF INFORMAL DISCOVERY CONFERENCE (VIDEO)
             BEFORE THE HONORABLE A. JOEL RICHLIN
12                UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:                    See next page.

15   Court Reporter:                 Recorded; CourtSmart

16   Courtroom Deputy:               Claudia Garcia-Marquez

17   Transcribed by:                 Jordan Keilty
                                     Echo Reporting, Inc.
18                                   9711 Cactus Street, Suite B
                                     Lakeside, California 92040
19                                   (858) 453-7590

20

21

22

23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

*Echo Reporting, Inc.*

2

1  APPEARANCES:

2  For the Plaintiff:              ELLYN S. GAROFALO, ESQ.
                                   AMIR KALTGRAD, ESQ.
3                                  Liner Freedman Taitelman
                                     Cooley, LLP
4                                  1801 Century Park West
                                   5th Floor
5                                  Los Angeles, California 90067
                                   (310) 201-0005
6
   For the Defendant:             ESRA A. HUDSON, ESQ.
7                                  Manatt Phelps & Phillips, LLP
                                   2049 Century Park East
8                                  Suite 1700
                                   Los Angeles, California 90067
9                                  (310) 312-4381

10                                 Wilkie Farr & Gallagher, LLP
                                   1875 K Street, N.W.
11                                 Suite 100
                                   Washington, D.C. 20006
12                                 (202) 303-1000

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    Los Angeles, California; Thursday, July 3, 2025 11:06 a.m.

2                        --o0o--

3                    (Call to Order)

4              THE CLERK:  Calling Case 2:25-MC-53, Liner

5    Freedman Taitelman Cooley, LLP versus Blake Lively.

6              Counsel, please state your appearances for the

7    record.

8              MS. GAROFALO (via Zoom):  Good morning, your

9    Honor.  Ellyn Garofalo and Amir Kaltgrad for Liner Freedman.

10             THE COURT:  Good morning.

11             MS. GAROFALO:  Good morning.

12             MS. HUDSON (via Zoom):  Good morning, your Honor.

13   Esra Hudson on behalf of Defendant Blake Lively.  With me

14   here today is my co-counsel at Wilkie Farr and Gallagher,

15   Kristin Bender.

16             THE COURT:  Good morning to you both.

17             Okay.  So -- so, thanks everyone for appearing.  I

18   asked everyone to join for an informal discovery conference.

19   Typically I do this before the motion is filed to try and

20   help you not file the motion, but I realized given the

21   unique procedural posture, you all kind of had to file your

22   motion to get here since this is an out-of-district subpoena

23   and motion to quash.

24             So, I thought I would -- I had -- I had a bunch of

25   questions at the time I scheduled this.  I think it was

4

1 actually before some of the supplemental briefing had come

2 in.  So, you've answered some of those questions now that I

3 have that, but -- did I --

4           MS. GAROFALO:  Oh, we lost Ms. Bender.

5           THE COURT:  Okay.  We'll give it a second and try

6 to let her in if she's --

7      (Pause.)

8           MS. HUDSON:  She's logging back in.  She had no

9 sound.

10           THE COURT:  Okay.

11      (Pause.)

12           THE CLERK:  Ms. Bender, can you hear us?

13           MS. BENDER (via Zoom):  Yes.  Apologies for that.

14 I -- I can hear now.  Thank you.

15           THE COURT:  Great.  Okay.  So, I was just saying

16 you already filed your motion.  So, I can't help you there.

17 But, in any event, I thought it would be helpful just to

18 chat with you all and ask you a few questions.

19           I guess from -- I'll start with Ms. Hudson.  I've

20 taken a brief look at the Southern District of New York

21 docket, but obviously there's a lot going on in the case.

22 So, I would be interested to hear from you just at a high

23 level kind of what's going on in the case, what are the

24 current deadlines and what's going on with discovery.

25           MS. HUDSON:  Well, we're -- we are in the heart of

5

1  discovery right now.  Our discovery deadline is fast

2  approaching --

3            THE COURT:  Which is what?

4            MS. HUDSON:  -- at August -- pardon?

5            THE COURT:  Sorry.  You were about to say --

6            MS. HUDSON:  I didn't hear you, your Honor.

7            THE COURT:  I was going to ask you what -- what it

8  is.

9            MS. HUDSON:  Yeah.

10            THE COURT:  August?

11            MS. HUDSON:  Okay.  August 15th.  So, substantial

12  completion was yesterday, July 1st (sic), and the -- the

13  close of principal discovery is August 15th.

14            THE COURT:  And what does --

15            MS. HUDSON:  So --

16            THE COURT:  -- substantial completion mean?

17            MS. HUDSON:  Meaning that the parties are required

18  to have exchanged more than -- I think is it 80 percent,

19  Kristin?  I'll let her chime in on that point, but I believe

20  it's over 80 percent of the documents they're going to

21  produce in the case, and my understanding is from the

22  Wayfarer parties, that their discovery is essentially

23  complete, which they represented in their production

24  yesterday, except for maybe a few straggling documents that

25  may -- may come in over the course of the next few weeks,

6

1  but it is essentially complete as far as -- is my

2  understanding.

3          THE COURT:  Okay.  And what --

4          MS. HUDSON:  And we are about to begin

5  depositions.  That's the next -- that's the next phase that

6  we're negotiating over, dates and times for depositions.

7          THE COURT:  Got it.  And what -- and what has

8  happened so far in terms of discovery rulings?  I know you

9  referenced one or two in your papers, but can you just

10 address that briefly?

11         MS. HUDSON:  There have been a number of discovery

12 motions filed both by third parties and by the parties in

13 this case, motions to compel, motions to quash, and the

14 judge in the case has decided all of them himself as well as

15 all matters on the merits.  With respect to discovery, I

16 think the closest analogous motion to ours was with respect

17 to our motion to compel responses to form interrogatories

18 from the Wayfarer parties regarding their ident --

19 identifying content creators and members of the media with

20 whom they've communicated.  And the judge in that case

21 granted our motion and overruled objections that are similar

22 to the ones made here on the basis of the definitions being

23 vague or their request being overly burdensome.  He also

24 upheld our request for the date range continuing from the

25 July 1st, 2024 time period to date.

7

1          THE COURT:  Okay.

2          MS. HUDSON:  And I will say on the issue of, you

3   know, the definitions being vague or overly broad, those are

4   the same definitions that have been used in all written

5   discovery in this case.  They are well known by the parties,

6   and the Wayfarer Defendants themselves have not taken up an

7   issue, you know, understanding those definitions, and the

8   judge, again, ruled that they were not vague or unduly

9   burdensome, and the Wayfarer parties were required to comply

10  with that same definition.

11         THE COURT:  Okay.  Ms. Garofalo, do you want to

12  add anything to kind of what's the current status of

13  discovery in the Southern District?

14         MS. GAROFALO:  I do.  I think Ms. Hudson overall

15  pretty well described the status of discovery.  The one

16  place that I would clarify is that the motion to compel that

17  Ms. Hudson just referenced is not, in my view, similar.

18              Here, the primary issue is the issue of seeking

19  the same discovery from opposing counsel.  So, while we need

20  not review the definitions, we are happy to accept the

21  rulings on the definitions by the New York judge.  But the

22  main issue we have here, particularly in light of, as Ms.

23  Hudson has implicitly acknowledged, that same or similar

24  discovery has been sought from the parties themselves and at

25  this point has been provided by the Wayfarer parties as to

8

1  the identity of content providers and so forth.

2         We can put that aside.  The key issue here is

3  whether or not these requests directed to opposing counsel

4  should be quashed or are proper.  And I'm sure your Honor

5  will get to those issues.  But, in general, as to the

6  overall summary, we would certainly agree it is accurate.

7         THE COURT:  Okay.  All right.  Well, then let me

8  pose a question to you now first, Ms. Garofalo.

9         So, obviously, the parties -- well, obviously,

10  Respondent has raised the issue of transfer.  So -- so, I

11  wanted to ask you about that.  The motion -- in the motion

12  to quash, Liner doesn't seem to actually respond to their

13  arguments, but I -- I do see I guess I'll call it a very

14  brief response in your supplemental brief.  And, you know,

15  as you -- as you note in setting for -- this is I -- yes,

16  this is your brief.  This is your supplemental brief.  You

17  quote the advisory note, and -- and as the advisory note to

18  Rule 45 says, the prime concern should be avoiding the

19  burden on local parties.  And that's the way I think about

20  it, right.  The Rule 45 was amended to allow folks to file a

21  motion to quash in the district of compliance to prevent a

22  nonparty, right, because we're always talking about a

23  nonparty under Rule 45 by definition, to prevent a nonparty

24  from having to leave their local jurisdiction, and they

25  should be able to seek relief wherever they are, right, and

9

1  they should -- you know, a non -- a nonparty shouldn't have

2  to go to New York.

3          But Liner really is -- Liner is really a -- a

4  unique nonparty, I suppose, right?  You are clearly a

5  nonparty, but do any of these concerns about not traveling

6  to New York apply to you?  I -- I'm struggling with that

7  since you're counsel of record regularly appearing before

8  this judge, and -- and I guess I'll add onto that -- to that

9  the reason I asked about the status of discovery is, given

10  the status of discovery, on the one hand, I'm super

11  sensitive to transferring -- I hate to -- I hate to dump my

12  homework on my colleagues.  So, I'm always sensitive about

13  that.  I actually hate transferring things because you're

14  really like giving someone else your work is how I view it,

15  and -- and I don't want to do that to my colleagues in the

16  Southern District.

17          Conversely, where you have a case that's been so

18  heavily litigated and is so far along in discovery, frankly,

19  if it were me, I would want -- I would want this transferred

20  to me because I almost -- conversely, here, I actually would

21  feel like I'm stepping n Judge Liman's toes.  So, I -- I

22  think there's -- so, that's why I asked about the status of

23  discovery.

24          So -- so, what are your thoughts about that?

25  Because I -- I really don't see any of the normal concerns

10

1  of Rule 45 that are the reason that we allow local

2  challenges to subpoenas for your client.

3          MS. GAROFALO:  Yes.  Well, firstly, Judge Liman --

4  and I apologize, your Honor.  I have not been involved in

5  the underlying case for very long.  I'm here representing

6  the Liner Firm in my capacity as partner at the Liner Firm.

7          The compliance here, the subpoena still requires

8  the actual acts of compliance to be performed in California.

9  We are a California firm.  We have sort of an address in New

10 York.  We have no lawyers there.  We do not -- we do not

11 have any --

12         THE COURT:  But you're counsel of record in the

13 Southern District of New York.

14         MS. GAROFALO:  On just -- on just the --

15         THE COURT:  You are -- you are litigating this

16 case, and you have an office.  You hold yourself out as

17 conducting business in the Southern District of New York.

18 You are conducting business in the Southern District of New

19 York.  So, that -- that argument to me just has so little

20 weight.

21         MS. GAROFALO:  Well, the first thing is that we

22 would not choose the forum, and we are not a party, and

23 those are two factors that I think are implicitly covered in

24 Rule -- Rule 45's requirement that cases -- that -- that

25 these issues be brought in the jurisdiction where compliance

11

1   is due.

2           The other issue is that in similar motions -- and

3   I -- again, I apologize.  I know that my colleagues on the

4   other side are much more intimately familiar with every

5   motion that's been filed in New York, but the judge has in

6   other similar -- on other similar motions, found that Rule

7   45 applies and that the proceedings, motions to quash,

8   motions for protective order, should occur in those

9   jurisdictions.

10          You know, as the Judge knows, it is much more --

11  maybe does not know -- it is much more complicated to bring

12  this motion here.  We did go through all the hoops required

13  to bring the motion under Rule 37 here in this jurisdiction.

14  We do think that this is an issue that should be addressed.

15  Again, we have a looming discovery cutoff, and I assume my

16  colleagues are going to agree with -- my colleagues on the

17  other side are going to agree with that.

18          So, under --

19          THE COURT:  Wait.  What about -- what -- what I

20  think you could really add value on is what is the burden to

21  Liner from having to litigate this issue in the Southern

22  District of New York before Judge Liman as opposed to doing

23  it before me?

24          MS. GAROFALO:  Well, the burden is that we have

25  already put the time and effort into complying with Rule 37

12

1  and bringing this before your Honor in the jurisdiction that

2  is on the face of Rule 45 required as the jurisdiction to

3  bring this motion to quash.

4        Our actual compliance, the documents and so forth

5  -- and I don't want to get into the specifics until your

6  Honor does, but things like, you know, our phone records,

7  all of that, all of that would have to be searched in

8  production.  All of the tasks necessary to comply should be

9  the -- should we be ordered --

10        THE COURT:  Well, and to -- but, to be clear --

11        MS. GAROFALO:  -- would occur here.

12        THE COURT:  But, to be clear, if I transfer the

13  motion, you -- you can raise all of those issues.  It's not

14  I -- that's not an adjudication in any way, and it doesn't

15  -- it expresses no opinion on the validity and, you know,

16  that's for Judge -- then Judge Liman could -- could quash

17  the whole thing.  But it's just --

18        MS. GAROFALO:  Right.

19        THE COURT:  -- a question of should I do it or

20  should he do it.

21        MS. GAROFALO:  Right.  And, conversely, Ms.

22  Lively's counsel could have brought a motion for protective

23  order in New York with respect to the subpoena because the

24  objections were served.  They were aware of the objections

25  to subpoenaing opposing counsel and to individual requests,

13

1  and I think that the Lively -- Lively's -- Ms. Lively's

2  counsel understands that Judge Liman's practice has been to

3  say, I am complying with Rule 45.  Go to the jurisdiction.

4  Go to the jurisdiction where compliance is required, and in

5  this case, it is California.

6         THE COURT:  Okay.  I mean, here's -- so, here's

7  another thing.  And, so, I hear you that you've already put

8  the time and effort into the motion here and you've complied

9  with our Local Rules.  That makes sense.  I mean, on the

10 other hand, if I transfer the motion, I'm just going to

11 transfer the whole thing.  So, it will be up to Judge Liman

12 whether presumably he could just rule on it as it's briefed,

13 but I don't -- you know, he may require something else.

14 That -- that's up to his prerogative.

15         You know, I mean I guess another thing that occurs

16 to me, another reason I'm thinking about transferring is

17 really the analysis here -- getting more to your substantive

18 arguments -- the analysis here, you know, whether under

19 Felton or, I don't know, is it Freedman in the --

20         UNIDENTIFIED SPEAKER:  Freedman.

21         MS. GAROFALO:  Freedman.

22         THE COURT:  Freedman.  Honestly -- and you may

23 have seen I've issued a couple of opinions on this topic.

24 To me, you just look at Rule 26.  I -- I don't get bogged

25 down in these sort of Shelton or Freedman frameworks.  I

*Echo Reporting, Inc.*

14

1  think you just look at Rule 26, and what you do is you sort

2  of look at have -- you know, how essential is this

3  information and have we exhausted all the other efforts to

4  get it, to avoid having to ask attorneys, right.  That

5  should sort of be the last stop of asking the law firm.

6          And, so, to do that analysis, it's -- to me,

7  that's something that Judge Liman should do.  That's my

8  concern as well.  You know, to adjudicate your motion, I

9  sort of need to get my hands around all the other discovery

10 and what else has happened, and I would -- and I -- you

11 know, and I think the burden would be -- I would put the

12 burden on Respondent to show that they've exhausted these

13 other avenues.  And, you know, I'd have to consider all the

14 other rulings in the case, and all of that makes me think

15 that, again, I'd sort of be stepping on the Southern

16 District of New York's toes and especially given how far

17 into the case we are and how complex it is, that it feels

18 like there are extraordinary circumstances to justify

19 transfer under Rule 45.

20          So, any -- any thoughts on that, Ms. Garofalo?

21          MS. GAROFALO:  Yes.  I -- I don't think with

22 respect to the issues raised by this motion -- by this

23 subpoena and the motion to quash, I don't think it is all

24 that complicated in that they -- they are -- the request

25 targeted very specifically to the identification of content

15

1  providers, to whether or not this firm has paid those

2  providers on behalf of its clients, the firm's financial

3  records.  I presume they would use that information to

4  subpoena banks to see if there were any payments to records,

5  which is a whole can of worms that I'm not going to get into

6  in this part of their conversation.  You know, and any

7  contract, invoices and so forth relating to content

8  providers.

9          I don't think there can be any dispute, and I

10 don't think it's -- I think it would be agreed that

11 information relating to the identification, agreements, so

12 forth with content providers on behalf of the clients has

13 been sought from and has been provided now by the Wayfarer

14 parties.

15         And, in fact, just this morning, we received

16 notices of subpoenas to TikTok and Youtube and so forth

17 asking for information relating to particular provider

18 accounts.  They have the addresses.  They have the names for

19 the providers and so forth.

20         So, the information that they're looking for,

21 whether or not these providers were somehow solicited or

22 approached by this firm or any of its lawyers, they have

23 that information.  They obtained the information or enough

24 information in that particular -- the identify of the

25 providers and so forth, the proceed without having to impose

16

1  these obligations, discovery obligations on opposing

2  counsel.

3          So, I -- I don't think it really needs Judge Liman

4  to look at that issue.  I don't think there's any real

5  dispute over those facts, and at this point, it -- there

6  should be enough information for this Court not to have to

7  look further.  It -- it does not take an analysis of the

8  case.  There are allegations made.  There are no facts that

9  have been pleaded or alleged in the reply, the response of

10 Ms. Lively's counsel that specifically anybody here at this

11 firm or Mr. Freedman in particular had any communication,

12 paid anything, did anything.  Those facts just don't exist.

13         What we have here is an allegation.  And, in fact,

14 the information necessary to pursue those allegations and do

15 further discovery if Ms. Lively believes it's warranted, has

16 already been provided by third parties, not a law firm.

17         So, I'm really not convinced.  The Court may be,

18 but I'm not.  The Court has to look very deeply into this

19 case in order to make a ruling on whether or not this firm

20 should be required to provide such things as its financial

21 information and phone records to opposing counsel, to Ms.

22 Lively.

23         THE COURT:  Okay.  Ms. Hudson, do you want to add

24 any -- any comments to sort of my -- my colloquy with Ms.

25 Garofalo?

17

1        MS. HUDSON:  Sure.  On the issue of the transfer,

2   I just wanted to clarify that actually the -- the Liner Firm

3   did choose the Southern District of New York.  They filed

4   the affirmative on behalf of the Wayfarer parties, which was

5   not a cross-complaint but a separate lawsuit against Ms.

6   Lively and other Defendants in the Southern District of New

7   York.  So -- so, that was one that was selected by the firm

8   and didn't need to be.

9        With respect to third parties, you know, third

10  parties are -- are different because they -- they did not

11  affirmatively select that forum, unlike the Liner Firm and

12  their client.  And the -- for the purposes of efficiency,

13  Judge Liman does have a very short window for discovery

14  motions.  The opposition to discovery motion must be filed

15  within 48 hours, and there are no replies.  So, in the event

16  that Judge Liman required us to rebrief this, which I am

17  skeptical that he would do because, as your Honor noted,

18  it's fully briefed, and he may just rule on the papers that

19  are before him.  There is an abbreviated schedule so -- so

20  he can do that.  So, I don't think that's going to be an

21  issue, and I don't think there's a burden there.

22        So, I -- we -- I agree with your views on this,

23  your Honor, about Judge Liman being the appropriate person

24  to decide this issue on the merits.

25        I -- I do want to briefly address a couple of the

18

1  merits-based issues that Ms. Garofalo addressed in the event

2  that your Honor is inclined to decline transfer.

3         Ms. -- Ms. Garofalo said that the Wayfarer parties

4  have already produced documents that we're seeking here, and

5  if it's the representation that the Wayfarer parties have

6  produced documents that are uniquely within the Liner Firm's

7  possession, custody and control and they are not within

8  possession, custody or control of the Wayfarer parties, then

9  the -- then we agree we have nothing to discuss here, but

10 it's not our -- our understanding that that's the case.

11        To the extent there is a production from the

12 Wayfarer parties, that has to do with the Wayfarer parties'

13 communications and contacts with content creators or members

14 of the media, including two of whom who are publicist and

15 crisis management professionals who may have routine

16 communications on their own with content creators and

17 members of the media.

18        But what we're seeking here in particular are the

19 Liner Firm's communications unique to them, not that are

20 from the Wayfarer parties, and there -- and the reason we're

21 doing that get to the second point which Ms. Garofalo made,

22 which is that the Liner Firm and, in particular, Bryan

23 Freedman of the Liner Freedman Firm, is alleged to be a

24 percipient witness in this case, not functioning merely as

25 litigation counsel but as a percipient witness whose

19

1  communications are the basis for which the defamation claim

2  was made in this case through an agency theory, as well as

3  an active participant in the retaliation claim that is

4  fundamental here.

5          So, the facts of the case and how -- who is

6  involved and how are actually critical here, and it's

7  important to understand the difference between Bryan

8  Freedman in particular as litigation counsel and his role as

9  a percipient witness, which is alleged here.  And, yes, it's

10 based on allegations, but also some evidence.  And the

11 evidence is included in the complaint.

12         THE COURT:  Okay.  Well, I think the parties have

13 answered all the questions I had.  Anything -- anything I'm

14 missing that anyone wants to talk about?

15         MS. GAROFALO:  Just one clarification if the Court

16 is looking further than just transfer.  Again, without

17 getting into the nitty gritty of the arguments because your

18 Honor has not asked for those arguments, but the subpoena

19 breaks down -- there are a couple of requests in the

20 subpoena such as identification of all the Liner Firm bank

21 accounts and past financial institutions.

22         I would agree that this is not information that's

23 available from the part -- from the parties themselves or

24 third parties.  However, the -- the core of the -- of the

25 requests, as I think Ms. Hudson just stated, are these

20

1   communications.  And these communications, if they existed

2   -- and I -- and I will tell the Court that if we are

3   compelled to answer any of these interrog -- any of these

4   requests, we didn't have contracts.  We didn't have -- make

5   payments to anybody who falls within the definition --

6   prevailing definition of content creator.

7           But that information, which is the information

8   that really goes to the heart of the complaint -- and they

9   are allegations.  There are no facts in the complaint.

10  They're allegations that Liner Freedman did X, Y and Z.

11  Well, Mr. Freedman, in the course of representing his

12  clients, did make statements to the press.  They're all

13  public.  They're out in the open.  There's really no mystery

14  here as to what was going on.

15          So, the -- the  issue, again, it is -- it's a

16  fairly narrow issue, can -- is it appropriate to get this

17  discovery, the identification of the content creators, who

18  was communicated with by the public relations people Ms.

19  Hudson just referenced.  All of that information has now

20  been provided, as evidenced by the subpoenas that were

21  served -- or the -- the notice of subpoenas that were served

22  this morning identify those particular content creators.

23          This is massive allegations without any underlying

24  facts, without a single fact that Mr. Freedman or the Liner

25  Firm talked to X or paid somebody or was somehow involved.

21

1  It is very easy to say somebody is a percipient witness, but

2  the cases that are cited by Ms. Lively that talk about when

3  it's appropriate to seek discovery from counsel involves

4  such things as a dispute over a contract where the lawyer

5  was actually engaged factually, no dispute.  The lawyer

6  negotiated the contract in dispute.

7          Another case cited by Plaintiff involves a

8  copyright, and the lawyer in that case was the lawyer who

9  actually applied for and obtained a copyright.  That fact

10  was not in dispute.

11          Here there is no fact that Mr. Freedman

12  communicated with content providers, much less paid them,

13  much less used Liner accounts or, you know, his -- his own

14  records going back over -- well, approximately a year are

15  somehow going to add anything to the body of knowledge that

16  the Plaintiff has.  It -- it's just -- it is not

17  analogous --

18          THE COURT:  Okay.  Understood.  And --

19          MS. GAROFALO:  -- to this case that's --

20          THE COURT:  -- and it would -- so, it's been super

21  helpful to chat with everybody and sort of get the context

22  of -- since you all are living this and this is this large

23  many pieces of litigation, not just one piece of litigation,

24  multiple cases.

25          My -- my sense here is that I need to send this on

22

1   its way as quickly as possible to New York.  So, that's what
2   I'm going to try to do.  I'm going to try to do that for you
3   this weekend to sort of, you know, keep you all moving.
4   That's -- that's another reason I think I need to transfer
5   the case is you have tight deadlines that I have no ability
6   to help you with.  If this were before me, I could work with
7   you.  We could adjust deadlines.  I -- I feel like I'd be
8   interfering with the presiding judge's scheduling order.
9   So, those are some of my thoughts.

10          I'm going to -- my -- my plan is to do that for
11  you this weekend is my goal.  If -- if in writing that I
12  somehow change my mind, I'll -- I'll let you all know, but,
13  otherwise, that's the plan, and I'm hoping to get you
14  something quickly, and you -- and you can -- all your merits
15  arguments will be reserved for Judge Liman then.

16          Any -- any final words from you, Ms. Hudson,
17  anything I missed here?

18          MS. HUDSON:  I don't think so, your Honor.  Thank
19  you.

20          THE COURT:  Okay.  I -- I appreciate you all
21  making the time to chat.  I -- I -- it was very helpful.
22  I'll continue to think about it, but you kind of know my
23  plan, and if anything changes, you'll -- I'll let you know.

24          Thank you all.

25          MS. HUDSON:  Thank you, your Honor.

23

1          MS. GAROFALO:  Thank you, your Honor.

2          THE CLERK:  This Court is now adjourned.

3      (Proceedings concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Jordan Keilty                    7/11/2025
     Transcriber                         Date
6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
     /s/L.L. Francisco
9    L.L. Francisco, President
     Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25